Chiddy Golden
825 S Hill St. #906
Los Angeles, CA 90014

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CHIDDY GOLDEN, an Individual; )

              Plaintiff, )

          v. )

TRANSUNION, LLC, a business entity, )
form unknown; EXPERIAN )
INFORMATION SOLUTIONS INC., is )
a business entity, form unknown; )
EQUIFAX INFORMATION )
SERVICES, LLC., is a business entity, )
form unknown; and DOES 1-10, )
Inclusive, )

           Defendant(s). )

Case No.: 2:25-cv-11740-AH-SK

**PLAINTIFF'S OPPOSITION TO DEFENDANT EQUIFAX'S MOTION FOR RULE 11 SANCTIONS**

- 1 -

**PLAINTIFF'S OPPOSITION TO DEFENDANT EQUIFAX'S MOTION FOR RULE 11 SANCTIONS**

## I. INTRODUCTION: THE FCRA IS A TEMPORAL STATUTE, NOT A POST HOC FIX

Defendant Equifax has filed a Motion for Sanctions that is fundamentally improper, procedurally defective, and entirely unbound from the federal statutes governing this litigation. Equifax's motion is not a genuine grievance regarding a frivolous pleading; it is a bad-faith tactical mechanism designed to harass a pro se litigant, unlawfully limit the scope of Plaintiff's operative Complaint, multiply these proceedings and launder post hoc, inadmissible hearsay into the evidentiary record ahead of Summary Judgment.

Equifax is executing a transparent "bait-and-switch" scheme. By attempting to force Plaintiff to engage with newly manufactured, third-party hearsay regarding a legally distinct nonexistent entity, Equifax hopes to reframe Plaintiff's factual federal claims into a state-law debt dispute. Their bad-faith scheme is clear: Equifax and the coordinated Defendants are manufacturing these legal claims in the hope that Plaintiff abandons the factual Fair Credit Reporting Act (FCRA) claims. If Plaintiff takes the bait, Equifax will inevitably reverse course and claim that Consumer Reporting Agencies do not adjudicate debts, while actively attempting to do exactly that through this motion, their Summary Judgment motion and other recent filings. Plaintiff will not take this bait.

Furthermore, Equifax continually attempts to reform and narrow the multiple violations alleged in Plaintiff's Complaint. Liability under the FCRA (specifically 15 U.S.C. § 1681b (permissible purpose), 15 U.S.C. § 1681e(b) (reasonable procedures), 15 U.S.C. § 1681i (reinvestigation duties, including the failure to provide a written description of the investigation), 15 U.S.C. § 1681n (willful noncompliance), and all other counts alleged in the operative Complaint) is judged by the reasonable procedures Equifax actually employed, and the strict permissible purpose it failed to maintain or administer towards its business partner IQ Data *at the exact time* of

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT EQUIFAX'S MOTION FOR RULE 11
SANCTIONS**

Plaintiff's administrative disputes and at the relevant times prior to this case being brought.

The FCRA does not allow a Consumer Reporting Agency to cure its willful, reckless statutory violations by playing a "Name Game" with the Court and introducing unauthenticated, third-party documents six months into federal dispute.

Equifax reported and verified a legally nonexistent entity ("City View CA"). By actively attempting to substitute the originally reported entity with a newly conjured, separate entity ("City View Apartments") within this very motion and other filings, Equifax effectively admits on the official record that its original reporting was inaccurate and required substitution. Because Equifax's motion relies on manufactured connections, irrelevant hearsay, and demonstrably false declarations regarding Plaintiff's conduct, the motion must be denied in its entirety.

## II. EQUIFAX'S FATAL "SAFE HARBOR" DEFECT

Before this Court reaches the substantive merits of Equifax's hearsay, the motion must be denied as a matter of law for a fatal procedural defect. Equifax failed to comply with the strict "Safe Harbor" requirements of Federal Rule of Civil Procedure 11(c)(2). Federal Rule of Civil Procedure 11(c)(2) mandates: *"A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."* The Ninth Circuit strictly construes this provision, holding ("that the procedural requirements of Rule 11(c)(1)(A)'s "safe harbor" are mandatory"); ("Because [Defendant] did not follow the mandatory service procedure of Rule 11(c)(1)(A), we reverse the award of sanctions"), See *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001).

- 3 -

**PLAINTIFF'S OPPOSITION TO DEFENDANT EQUIFAX'S MOTION FOR RULE 11 SANCTIONS**

("We enforce this safe harbor provision strictly"), See *Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005).

The fundamental purpose of the safe harbor is to afford the opposing party 21 days to review the exact factual and evidentiary contentions the moving party intends to present to the Court. Equifax's Rule 11 motion is inherently frivolous, relying upon a highly prejudicial and legally erroneous alteration of material facts. Equifax fed unsworn, post hoc hearsay to the Magistrate Judge regarding the identity of the creditor, and now weaponizes the Magistrate Judge's erroneous adoption of those arguments as if the Magistrate Judge possessed personal knowledge of the credit file or any of the disputes initiated by Plaintiff regarding the disputed tradeline.

Even though Equifax's Rule 11 motion is frivolous and founded upon an erroneous alteration of material facts, the motion filed with the Court must still be the exact motion served upon the opposing party. A party cannot serve a preliminary draft, spend 21 days manufacturing new hearsay material and conducting further conferences, and then file a materially altered motion.

Equifax did exactly that. In her declaration, Equifax's counsel Singh swears to have delivered a "Rule 11 Letter" and motion to Plaintiff on April 23, 2026. However, the Motion ultimately filed with this Court is materially and substantively different from whatever Equifax claims to have served on April 23. A comparison of the April 23 service copy which Equifax titled (Exhibit C) in their filed Motion reveals staggering discrepancies:

**1. Massive Evidentiary Expansion:** The 11 page letter along with the 16-page motion draft served on April 23 merely referenced exhibits and a declaration, but it did not contain the attached exhibits nor the executed declarations. The Motion (Dkt 161) along with is exhibits actually filed with the Court spans 224 pages, effectively ambushing Plaintiff with close to 200 pages of unserved exhibits and a newly generated, legally defective "Certificate of Authenticity" that was not even created on April 23.

**PLAINTIFF'S OPPOSITION TO DEFENDANT EQUIFAX'S MOTION FOR RULE 11
SANCTIONS**

**2. Substantive Alteration of the Notice of Motion:** The April 23 Notice of Motion referenced a single L.R. 7-3 conference on April 15 (No meet and confer occurred with Plaintiff on April 15, 2026). The filed Notice of Motion was entirely rewritten to change the conference dates to April 29 and May 14, and now relies on an entirely new Declaration from a second attorney, Counsel Brooks.

**3. Chronological Impossibility of Declarations:** The filed Motion relies upon sworn Declarations from Counsel Brooks and Counsel Singh that are dated and executed on May 15, 2026, detailing events and conversations that allegedly occurred on May 14, 2026. It is a physical and temporal impossibility for Equifax to have served this evidentiary material on April 23.

**4. Introduction of New Exhibits:** The filed Motion (Dkt 161) contains entirely new evidence that was never served during the safe harbor period, specifically a newly inserted "Exhibit E" (containing emails dated May 13 and May 14, 2026).

Because Equifax substantially altered the Notice of Motion, withheld hundreds of pages of exhibits from the service copy, added newly minted declarations detailing events from mid-May, and inserted new exhibits that did not exist on April 23, Equifax failed to serve the actual motion filed with this Court.

Therefore, Plaintiff was completely deprived of the mandatory 21-day Safe Harbor regarding the specific evidentiary and legal contentions currently before the Court. Under the strict compliance standard of the Ninth Circuit, this procedural violation is fatal, and the motion must be summarily denied.

**III. THE MAGISTRATE JUDGE "NAME GAME" AND SHIFTING NARRATIVES**

Equifax attempts to shield its FCRA violations by weaponizing a prior, erroneous statement made by the Magistrate Judge. The Defendants originally fed the Magistrate Judge a post-hoc hearsay name ("City View Apartments") regarding the identity of the creditor reported and the Magistrate Judge accepted this substitution without any supporting affidavit, admissible documentation, or chain of custody in spite of Plaintiff

**PLAINTIFF'S OPPOSITION TO DEFENDANT EQUIFAX'S MOTION FOR RULE 11 SANCTIONS**

offering proof of Defendants real time reporting of a different Original Creditor. Defendants improperly induced this factual substitution by relying entirely on the unsworn assertions of defense counsel. Equifax and all Defendants from (Dkt 94) onwards weaponized the Magistrate Judge's erroneous adoption of those arguments as if the Magistrate Judge possessed personal knowledge of the credit file or any of the post hoc original creditor substitutions and narrative changes of the defendants. However, it is black-letter law in the Ninth Circuit that unsworn attorney argument cannot substitute for admissible evidence. See Barcamerica Int'l USA Trust v. Tyfield Importers, Inc., 289 F.3d 589, 593 n.4 (9th Cir. 2002) ("**The arguments and statements of counsel are not evidence and do not create issues of fact**...").
*British Airways Bd. v. Boeing Co.*, 585 F.2d 946 (9th Cir. 1978) ("**legal memoranda and oral argument are not evidence, and they cannot by themselves create a factual dispute**").
Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989) (**"It is well established that unauthenticated documents cannot be considered... To be considered by the court, documents must be authenticated by and attached to an affidavit that meets the requirements of the [Federal Rules] and the affiant must be a person through whom the exhibits could be admitted into evidence."**)
Singh v. INS, 213 F.3d 1050, 1054 n.8 (9th Cir. 2000) ("**statements in motions are not evidence and are therefore not entitled to evidentiary weight**"). By substituting a legally distinct entity into the record based on an evidentiary void, Defendants severely prejudiced Plaintiff and fundamentally distorted the factual baseline of this litigation.

Additionally, the Court does not possess personal knowledge or the authority to act as a Consumer Reporting Agency nor can it retroactively substitute an original creditor to cure an FCRA violation.

**PLAINTIFF'S OPPOSITION TO DEFENDANT EQUIFAX'S MOTION FOR RULE 11 SANCTIONS**

When Defendants later realized that the substituted "City View Apartments" was *also* legally nonexistent and failed to link to the originally reported "City View CA", Equifax pivoted its narrative once again. Equifax and all defendants began unilaterally dropping suffixes in its briefs to feign identicality. Equifax's own reporting and late-stage document productions betray this deception. The principal addresses reported for these entities at different times completely contradict each other, proving they cannot be casually conflated by simply erasing letters from a name, The new entity variation of listed as "City View (CA)" also has a different principal address than the previous alleged addresses. Equifax cannot use a Rule 11 motion to assert as "fact" the very connections it previously failed to verify during its administrative reinvestigations. (See **Exhibit B**)

## IV. EVIDENTIARY LAUNDERING: DEFENSE COUNSEL CANNOT AUTHENTICATE HEARSAY

Even if this Court excuses Equifax's fatal procedural defect, the substantive foundation of Equifax's motion relies entirely on inadmissible, unauthenticated hearsay. Equifax is attempting a procedural maneuver akin to money laundering where cash gained through non-legal means is washed by passing it through legitimate businesses and banks numerous times to the point where the actual origins are eventually forgotten or become untraceable. Here Equifax has employed the tactic through evidentiary laundering: passing unauthenticated, third-party hearsay through its own law firm and it's furnisher business partner IQ Data, seemingly hoping the Court will ignore the documents' incurable defects and origins simply because defense counsel attached them to a motion.

Equifax's attempt to authenticate these third-party records is legally defective on its face. In her sworn declaration, Equifax's counsel Singh attempts to establish the business records exception to the hearsay rule (Federal Rule of Evidence 803(6)) by stating under penalty of perjury: *"The attached records were kept by the Seyfarth Shaw LLP in the regular course of its business, and as a regular practice of the*

*Seyfarth Shaw LLP."* Counsel for Equifax goes even further risking perjury by claiming ***"The attached Exhibits were made at or near the time of occurrence of the matters set forth in the attached records by, or from information transmitted by, a person with knowledge of those matters."***

Defense counsel's attempt to authenticate these hearsay materials creates a fatal evidentiary paradox. In Paragraph 3 of her declaration, counsel Singh swears she possesses 'personal knowledge of the facts herein stated.' Towards the end of the declaration, she then proceeds to swear that these third-party hearsay records 'were made at or near the time of occurrence' and 'were kept by the law firm Seyfarth Shaw LLP in the regular course' of the law firm's business. By asserting direct, personal knowledge over the creation and maintenance of records purportedly belonging to a third-party nonexistent entity, defense counsel raises an alarming question for this Court: Is defense counsel admitting to having a hand in manufacturing these documents for the purpose of this litigation? A law firm cannot act as the Custodian of Records for a legally nonexistent entity, and counsel cannot possess personal knowledge of how such internal records were created unless she was involved in their creation.

Furthermore, defense counsel's claim to possess "knowledge" regarding this account is directly contradicted by Equifax's own prior admissions. During the actual administrative reinvestigation process, Equifax's representatives explicitly stated on recorded calls that the disputed tradeline belonged to a ***bank***, not to this mid litigation substituted pivot. (See **Exhibit C** at timestamp 13:06, 23:28). Defense counsel cannot feign personal knowledge to authenticate third-party records today when Equifax itself claimed the entity was a bank at the time of the FCRA violation.

Equifax's subsequent assertion that Plaintiff was 'fully aware' of this debt because a third-party collection agency allegedly mailed him multiple letters is factually baseless and irreparably contradicted by Equifax's own exhibits and timeline. First, defense counsel lacks the personal knowledge, or two way mailroom affidavits

- 8 -

**PLAINTIFF'S OPPOSITION TO DEFENDANT EQUIFAX'S MOTION FOR RULE 11 SANCTIONS**

required to prove these purported letters were ever actually placed in the mail or delivered, and Plaintiff explicitly denies ever receiving them. Second, Equifax's claim that these letters were mailed to Plaintiff's 'home address' is highly suspect; Equifax conveniently redacted the addresses on its own exhibits to obscure the fact that these documents were purportedly directed to multiple different addresses, destroying any legal presumption of receipt. (See **Exhibit A**)

Third, Equifax's reliance on these purported letters creates a fatal chronological contradiction that destroys its own narrative. In its current filings, Equifax explicitly asserts that Plaintiff vacated the alleged premises in 2024. Yet, Equifax simultaneously attempts to introduce unauthenticated collection letters dated in 2025 that were purportedly mailed to that exact same vacated address. Equifax cannot logically claim Plaintiff was 'fully aware' of a debt based on letters allegedly mailed in 2025 to an address Equifax simultaneously asserts Plaintiff had abandoned a year prior.

Finally, and most fatally, the face of these purported letters contradicts Equifax's own narrative in this very motion. While Equifax argues these letters were attempting to collect a debt on behalf of a newly conjured entity, the face of the letters list '(City View (CA)', yet *another* legally distinct name variation that does not match the 'City View CA' entity Equifax actually reported and verified on Plaintiff's credit file. Far from proving Plaintiff's lawsuit is frivolous, these unauthenticated, contradictory documents perfectly illustrate the exact inaccurate reporting and entity-confusion that forms the factual basis of Plaintiff's FCRA claims.

## V. DISCOVERY HYPOCRISY AND INTERROGATORY EVASION

Equifax's motion asserts that the identity of the creditor is "at the heart of this case." Yet, Equifax's conduct during the discovery process reveals a staggering hypocrisy that completely undermines this Rule 11 motion.

When Plaintiff served Interrogatories directly asking Equifax to identify the exact legal name, state of incorporation, and principal place of business for the entity Equifax *actually reported* on Plaintiff's credit file ("City View CA"), Equifax flatly refused to

- 9 -

PLAINTIFF'S OPPOSITION TO DEFENDANT EQUIFAX'S MOTION FOR RULE 11 SANCTIONS

answer. Equifax objected on the grounds that identifying the actual reported entity *"seeks information that is neither relevant nor proportional to the needs of the case"*. Plaintiff asked similar relevant questions and Defendants gave the same type of answer. (See **Exhibit D at Interrogatory Request No. 18, 20, 24, 25**)

Equifax cannot litigate in bad faith by claiming under oath that the *actual* entity it reported is **"not relevant,"** while simultaneously weaponizing third-party hearsay regarding a *different* entity ("City View Apartments") to demand Rule 11 sanctions. To further distract from its FCRA violations, Equifax attempts to introduce a purported registration from an entirely unrelated matter to the claims of this case involving and a different dispute. Plaintiff will not engage with this irrelevant, out-of-context fishing expedition. The burden is not on Plaintiff to untangle Equifax's post hoc hearsay. The sole relevant inquiry is Equifax and all Defendant's reporting of a legally nonexistent entity, which this unrelated hearsay does not cure.

**VI. THE PRIMA FACIE STANDARD IS MET AND CANNOT BE CURED POST HOC**

Equifax heavily cites Carvalho v. Equifax Info. Servs., LLC to argue that Plaintiff must make a prima facie showing of inaccuracy to sustain an FCRA claim. Equifax is attempting to twist the law to escape its own liability.

Plaintiff *did* make a prima facie showing of inaccuracy: Equifax reported, verified, and maintained an alleged tradeline belonging to an entity that does not legally exist.

Under 15 U.S. Code § 1681a – Definitions: **(b)** "The term "person" means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." Under section 1681a(b) only a person can be reported a creditor.

*Carvalho* requires reasonable procedures to assure accuracy; it does not grant a CRA the right to cure a prima facie inaccuracy by substituting a different nonexistent entity into the record six months after the litigation commenced.

**PLAINTIFF'S OPPOSITION TO DEFENDANT EQUIFAX'S MOTION FOR RULE 11 SANCTIONS**

## VII. DEFENDANTS ARE VIOLATING THE VERY RULE 11 STANDARDS THEY CITE

Equifax devotes a significant portion of its brief to citing controlling Rule 11 case law. Ironically, the legal standards Equifax cites perfectly describe Equifax's own bad-faith conduct in this litigation.

Equifax relies on ***Townsend v. Holman Consulting Corp.*** to establish that arguments are "frivolous" when they are "baseless and made without a reasonable and competent inquiry". Equifax further cites Federal Rule of Civil Procedure 11(b)(1)-(4) to argue that sanctions apply to filings presented for an improper purpose, or those that assert factual contentions lacking evidentiary support.

Applying Equifax's own cited standards, it is Equifax (not Plaintiff) that is violating Rule 11. Equifax has presented this motion for the improper purpose of harassment, distraction, and evidentiary laundering. Equifax asserts factual contentions regarding the identity of the original creditor that completely lack admissible evidentiary support, relying instead on unauthenticated, third-party hearsay. Furthermore, Equifax made these baseless claims without a "reasonable and competent inquiry" into the temporal limitations of the FCRA or the fundamental rules of evidence regarding document authentication.

## VIII. REBUTTING THE FALSE DECLARATIONS AND DISCOVERY SMEAR CAMPAIGN

To manufacture a basis for this motion, defense counsel submitted declarations containing material omissions and demonstrably false narratives regarding Plaintiff's conduct during the discovery process.

**The Fabricated "Missed" Deposition:** In her declaration, Counsel Brooks states under penalty of perjury that "Plaintiff did not appear for his properly noticed deposition in this case". This is a deliberate and deceitful omission of material fact. Plaintiff notified Defendants nearly two weeks prior that Plaintiff was unavailable on that specific date. Defendants intentionally scheduled the deposition for a known date

- 11 -

PLAINTIFF'S OPPOSITION TO DEFENDANT EQUIFAX'S MOTION FOR RULE 11 SANCTIONS

of unavailability strictly to manufacture a default and create a false grievance for this motion and also for their MSJ. (See **Exhibit F**)

**The May 14, 2026 Meet and Confer:** Counsel Brooks claims that Plaintiff refused to answer questions and could not articulate an opposition during the May 14 meet and confer. This is factually false and contradicted by written records. Plaintiff explicitly accepted the meeting via email on May 14. During the conference, defense counsel attempted to convert a procedural Local Rule 7-3 conference into an abusive, unsworn deposition to harass Plaintiff over inadmissible hearsay in an attempt to feign authentication. Plaintiff enforced strict professional boundaries against this bad-faith fishing expedition. Plaintiff documented this in a follow-up email to correct defense counsel's self-serving narrative, explicitly stating in writing: ***"I explicitly provided my position (and my factual reasoning) regarding your Rule 11 Motion... When you continually attempted to convert a procedural meet-and-confer into an abusive, unsworn deposition to harass me over inadmissible hearsay, I enforced my stated boundary."*** (See **Exhibit E**). Furthermore, defense counsel have established a pattern of weaponizing Local Rule 7-3. Rather than conducting good-faith conferences to narrow disputed issues, Defendants utilize these mandatory meetings to badger Plaintiff, attempting to coerce the adoption of their post hoc hearsay narratives. When Plaintiff declines to abandon a valid FCRA claim to adopt Defendants' inadmissible hearsay, substantive discussion ceases. The conferences immediately devolve into coordinated pressure campaigns by all three corporate defendants. This bad-faith posturing frustrates the fundamental purpose of L.R. 7-3, which is designed to streamline litigation, not to harass pro se litigants or manufacture grievances for sanctions motions.

**The "Discovery Abuse" Deflection:** Equifax attempts to prejudice this Court by citing 635 discovery requests and Plaintiff's refusal to provide a 7-year residential history. The volume of Plaintiff's requests is the direct and natural result of litigating against corporate defendants who deploy evasive tactics and refuse to answer basic

**PLAINTIFF'S OPPOSITION TO DEFENDANT EQUIFAX'S MOTION FOR RULE 11 SANCTIONS**

interrogatories regarding the legally nonexistent entities they reported. Furthermore, objecting to a demand for a 7-year housing history is a standard, valid objection to an overbroad, harassing fishing expedition. Plaintiff's FCRA claim centers on a specific tradeline and a specific reporting timeframe beginning in or about October 27, 2025; a 7-year housing history is irrelevant and disproportionate under Fed. R. Civ. P. 26(b)(1).

## IX. DEFEATING THE MERITLESS "VEXATIOUS LITIGANT" THREAT

In a final attempt at intimidation, Equifax casually requests that Plaintiff be designated as a "vexatious litigant". This is an extreme and baseless escalation.

The Ninth Circuit requires district courts to make specific, substantive findings before declaring a party vexatious, including finding an inordinate number of frivolous filings. Plaintiff is prosecuting a single, factually grounded FCRA claim where the Defendants have repeatedly changed the name of the original creditor mid-litigation. Asserting statutory rights against a multi-billion dollar Consumer Reporting Agency that verifies legally nonexistent entities (and subsequently refuses to answer interrogatories regarding those entities) is not vexatious. It is the exact purpose for which Congress enacted the FCRA.

## X. CONCLUSION

Equifax's motion does not identify a single frivolous pleading. Instead, it attempts to litigate the ultimate merits of the Summary Judgment phase under the guise of a sanctions motion, while completely failing to comply with the mandatory Safe Harbor requirements of Rule 11(c)(2).

The motion is procedurally defective, relies on manufactured connections and inadmissible hearsay, and relies upon demonstrably false, defective declarations. Defense counsel is attempting to authenticate material of which she has no personal knowledge, nor could she ever, as both the originally reported entity and the mid-litigation attempted substitution are legally nonexistent.

**PLAINTIFF'S OPPOSITION TO DEFENDANT EQUIFAX'S MOTION FOR RULE 11 SANCTIONS**

Defendants have failed to present any chain of custody or admissible evidence that can disprove the local and state government records of non-existence, simply because no such evidence exists. If admissible proof of this entity's legal existence actually existed, these multi-billion dollar corporate Defendants, equipped with vast legal resources, would have produced it long ago. Instead, they are forced to rely on unauthenticated third-party hearsay.

Because Equifax filed this motion for the improper purposes of harassment, intimidation, and evidentiary laundering, Plaintiff respectfully requests that this Court:

1. **Deny** Defendant Equifax's Motion for Rule 11 Sanctions in its entirety;

2. **Award** Plaintiff the reasonable expenses incurred in opposing this frivolous motion, pursuant to Federal Rule of Civil Procedure 11(c)(2); and

3. **Exercise** its inherent authority to admonish defense counsel for manufacturing grievances, weaponizing Local Rule 7-3, and unreasonably multiplying these proceedings in bad faith.

Dated: May 22, 2026                                   By:/s/ Chiddy Golden

                                                      _____
                                                      Chiddy Golden
                                                      Pro Se Plaintiff

**PLAINTIFF'S OPPOSITION TO DEFENDANT EQUIFAX'S MOTION FOR RULE 11 SANCTIONS**