Chiddy Golden
825 S Hill St. #906
Los Angeles, CA 90014

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

CHIDDY GOLDEN, an Individual;

          Plaintiff,

          v.

TRANSUNION, LLC, a business entity,
form unknown; EXPERIAN
INFORMATION SOLUTIONS INC., is
a business entity, form unknown;
EQUIFAX INFORMATION
SERVICES, LLC., is a business entity,
form unknown; and DOES 1-10,
Inclusive,

          Defendant(s).

Case No.: 2:25-cv-11740-AH-SK

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' JOINT MOTION
FOR SUMMARY JUDGMENT**

- 1 -

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY
JUDGMENT**

## I. INTRODUCTION: A DEFENSE BUILT ON INADMISSIBLE HEARSAY AND PHANTOM ENTITIES

Defendants Experian Information Solutions, Inc., Equifax Information Services LLC, and Transunion LLC (collectively, "Defendants") predicate their entire Joint Motion for Summary Judgment on a foundation of inadmissible hearsay, manufactured timelines, and systemic spoliation. In an attempt to justify their willful violations of the Fair Credit Reporting Act (FCRA), Defendants rely on defective third-party certificates, attorney declarations that violate the Federal Rules of Evidence, and records belonging to a legally nonexistent phantom entity.

As the record and Defendants' own late-produced, sworn interrogatory responses explicitly reveal, Defendants cannot even agree among themselves on the legal identity of the original creditor they reported and verified. To cover up these fatal statutory failures, Defendants have engaged in extreme gamesmanship: backdating subpoena documents, scrubbing inquiry logs to hide impermissible access to Plaintiff's credit file, and utilizing the "joint briefing" process as an ambush to conceal over 900 pages of discovery until the final hour. Because Defendants' entire defense rests on evidence that must be stricken as a matter of law, their Joint Motion for Summary Judgment must be denied, and summary judgment must be entered in favor of Plaintiff.

## II. EVIDENTIARY OBJECTIONS: STRIKING DEFENDANTS' MANUFACTURED EXHIBITS

### A. The Strict Standard for Business Records at Summary Judgment

Under Federal Rule of Civil Procedure 56(c)(2), a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. In the Ninth Circuit, the standard is absolute: *"A trial court can only consider admissible evidence in ruling on a motion for summary judgment."* *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

Defendants rely entirely on third-party unauthenticable material (such as leases, move-out statements, and collection letters) that constitute inadmissible hearsay under Federal Rule of Evidence 801. To admit business records without a live witness, Defendants must provide a certification under Federal Rule of Evidence 902(11) that satisfies every foundational requirement of the Federal Rule of Evidence 803(6) hearsay exception. Defendants' certificates fail completely, and Defendants cannot cure these incurable deficiencies.

**B. The Defective Collection Company Certificate (The Undefined Abbreviation)**

Federal Rule of Evidence 803(6)(A) strictly requires the certification to swear the record was *"made at or near the time by—or from information transmitted by— someone with knowledge."* Defendants' certificate from the collection company completely omits this mandatory language, stating only that records were kept in the "normal course of business." **(See Exhibit A)**. Furthermore, while the signatory lists a title of "VP," they list their company as a mere three-letter abbreviation (e.g., "ARS") with no corporate details. A "VP" of an undefined, ambiguous acronym does not establish the foundation of being a "custodian or another qualified witness" with personal knowledge of the actual collection company's specific data compilation and record-keeping systems. Finally, the certifier merely states these are copies of records the company *"indicated were responsive,"* implying they are blindly passing along a search query result rather than swearing to the creation, transmission, and authenticity of the documents themselves.

**C. The Defective L.P./ Certificate (The Nonexistent Phantom Entity)**

Federal Rule of Evidence 803(6)(B) requires that the record was *"kept in the course of a regularly conducted activity of a business."* Defendants' certificate claims the records belong to a Limited Partnership (L.P.) doing business as (DBA) "CITY VIEW APARTMENTS" **(Exhibit B)**. However, official local county government and state records yield "no findings" for this DBA or Fictitious Business Name.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Defendants in their response MSJ in opposition Dkt 176-1 at Fact No. 26 and 27, defendants do not dispute these facts. **(See Exhibit C, AND Exhibit D)**. A legally nonexistent phantom entity cannot, by definition, conduct regular business activities or generate admissible business records under FRE 803(6).

**D. Impossibility of Custodian and "Live Witness"**

The signatory for the L.P. certificate identifies generically as a "Property Manager," but completely fails to state *where* they work or what specific property they manage whom they are employed by. Even if a location were listed or employment were disclosed, a property manager of an alleged physical building is not a corporate custodian of records. More importantly, it is a legal and factual impossibility for this individual to act as a qualified custodian for a DBA entity that does not exist. Because the government records irrefutably prove the DBA does not exist, Defendants cannot cure this hearsay by producing a live witness. No human being can be a custodian of records for a legally nonexistent business. Any individual paid or produced to swear otherwise under oath is committing federal perjury.

**E. The Mid-Litigation Creditor Substitution (The FCRA Violation)**

This L.P. is *not* the original creditor that Defendants reported or repeatedly verified during the administrative disputes and they have no relevance to the dispute or claims at issue. Defendants are attempting to find a scapegoat by engaging in a mid-litigation substitution of the original creditor. This substitution is fatal to their defense because it destroys any semblance of maintaining "reasonable procedures to assure maximum possible accuracy" as required by the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b). If they are swapping the creditor's identity mid-lawsuit to an entity that did not furnish the original data, they concede they did not accurately report or verify the true creditor prior to litigation. Furthermore, there is absolutely no evidentiary chain of custody linking the newly named L.P. to the alleged original creditor reported by Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT**

**F. Suborning Perjury and Manufactured Evidence**

It is glaringly evident that these two defective certificates (allegedly produced by two completely separate, unrelated companies in different states) are practically identical in their flawed, non-compliant phrasing. During the May 6, 2026, meet and confer conference, Plaintiff specifically confronted defense counsel, asking if they had a hand in creating these identical certificates and directing the signatures. Counsel did not deny drafting the fraudulent certificates; they simply changed the subject, which Plaintiff expressly noted for the record.

**III. DISSECTING DEFENDANTS' ATTORNEY DECLARATIONS AND MANUFACTURED TIMELINES**

**A. Counsel Cannot Act as Custodians (FRE 602 - Lack of Personal Knowledge)**

Under Federal Rule of Evidence 602, a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Defense counsel attempt to bypass this rule by attaching manufactured incurable hearsay third-party leases, move-out statements, and collection letters directly to their own declarations. An attorney litigating a case has no personal knowledge of a third-party's record-keeping systems and cannot serve as a conduit to admit otherwise inadmissible hearsay.

**B. Structural Defect of Transunion's Counsel Declaration**

In Paragraph 1 of his declaration, Transunion's Huse defense counsel explicitly declares under penalty of perjury that his statements are rooted in part on "the knowledge of those with whom I work." **(See Exhibit 5)**. Swearing to the unverified mental state and hearsay knowledge of other attorneys or paralegals violates the strict mandate of personal knowledge under Federal Rule of Evidence 602. This structural defect invalidates the declaration as a matter of law. How is the court supposed to decipher which parts are his personal knowledge and which are based on "those with

- 5 -

PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

whom he works" nor are these individuals disclosed meaning the entire declaration must be discarded.

**C. Legal Existence and Attorney Declarations**

In Paragraph 7 of her declaration, Equifax's defense counsel Singh falsely swears under penalty of perjury that third-party documents demonstrate "City View Apartments" does exist and was the original creditor." An attorney cannot manufacture the legal existence of an entity via declaration when official government records explicitly prove the entity is nonexistent and where defendants do not dispute these facts, (See MSJ in opposition Dkt 176-1 at Fact No. 26 and 27).

**D. Documents Created for Litigation (The Backdated Manufacturing)**

Federal Rule of Evidence 803(6) is explicitly designed for documents kept in the *ordinary course* of business. Records prepared specifically in anticipation of litigation, or in response to a dispute, lack the requisite trustworthiness required for admission. The documents produced via subpoena bear a highly suspicious creation date of **October 31, 2025**, the exact day *after* Plaintiff formally initiated a dispute on **October 30, 2025**. (**See Exhibit 6)**. Furthermore, Equifax's defense counsel admits she subpoenaed the Collection Company in mid-April 2026. Documents generated on the fly, backdated to align with dispute timelines, and subpoenaed mid-litigation are inherently untrustworthy and barred from admission.

**E. The Incurable Phantom Entity Defect**

The defects in Defendants' evidence are incurable. Because the alleged original creditor is a legally nonexistent phantom entity according to government records and not disputed by defendants (See MSJ in opposition Dkt 176-1 at Fact No. 26 and 27), there is no legitimate chain of custody for any debt assignment. A nonexistent entity cannot originate a contract, cannot accrue a balance, and cannot assign a debt.

**F. The Macro-Level Consequence (Total Evidentiary Collapse)**

- 6 -

PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

As established in *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002), inadmissible hearsay evidence must be entirely disregarded at the summary judgment phase. Striking these unauthenticated, procedurally defective documents leaves Defendants with absolutely no evidentiary foundation to rely or stand on. Consequently, Defendants' Motion for Summary Judgment must be denied as a matter of law.

**IV. DISMANTLING THE "INDUSTRY STANDARD" PROCEDURES AND ESTABLISHING THE LEGAL INACCURACY**

**A. The Legally Insufficient "Parrot" Defense**

Defendants' corporate declarants proudly admit that their entire "reinvestigation" process consists of routing disputes through an automated online platform called e-OSCAR and sending an Automated Consumer Dispute Verification (ACDV) form to the furnisher. Experian's declarant explicitly admits that Experian waits for the furnisher to "certify" the findings and return the ACDV. Under the Fair Credit Reporting Act, a CRA cannot merely act as a conduit. As federal courts have resoundingly held, ***"The "grave responsibilit [y]" imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a "reinvestigation" that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."*** *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997). Blind reliance on an automated e-OSCAR ping does not constitute a "reasonable reinvestigation" as a matter of law, especially when Plaintiff explicitly disputed that the debt was a factual impossibility.

**B. Stripping Context via ACDV Codes**

Defendants admit they reduce detailed, nuanced consumer disputes into generic, two-digit codes. For example, Equifax's declarant Pamela Smith (Dkt 153-8 at Paragraph 32) admits they reduced Plaintiff's telephone dispute to a generic "[020] NOT

- 7 -

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT**

HIS/HERS" code. This automated reduction strips the dispute of its crucial context, specifically, that the underlying entity is legally nonexistent, and the reported debt is structurally impossible. A generic code transmission that strips away the foundational nature of the consumer's dispute fails to fulfill the statutory duty of a reasonable reinvestigation under 15 U.S.C. § 1681i.

**C. The Failure of Defendants' Vetting Protocols**

All three Defendants dedicate significant space in their declarations boasting that they strictly vet their furnishers. Experian claims it "thoroughly credentials every data furnisher"; Transunion claims it "vets all its furnishers" and utilizes "proprietary algorithms"; and Equifax claims it uses an extensive "due diligence process." However, this purported defense is fatally undermined by the objective facts of this case. Their supposedly rigorous vetting systems allowed a furnisher to report, and the CRAs to repeatedly verify, an alleged debt originating from a phantom, legally nonexistent entity. If their protocols were functioning and reasonable, it would be impossible for an unregistered ghost entity to intrude their databases.

**D. Abdication of Statutory Duty (The "Identity Theft" Trap Avoided)**

By admitting that they rely entirely on the furnisher's ACDV response to verify the account, Defendants concede they conducted no independent investigation into Plaintiff's explicit claims regarding the nonexistence of the creditor. Experian's declarant explicitly argues that it is "not possible for Experian to simply accept the word of consumers," yet Experian demands the Court accept that it is perfectly legal for a CRA to blindly accept the unverified, automated word of a debt collector reporting a nonexistent entity. Defendants cannot shield themselves from liability by demanding identity theft documentation (such as a police report) for a dispute fundamentally based on the factual nonexistence of the creditor.

The Ninth Circuit strictly forbids this exact abdication of duty: ***"After Dennis notified Experian of the error, Experian had a duty to 'conduct a reasonable***

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT**

*reinvestigation to determine whether the disputed information [was] inaccurate.' 15 U.S.C. § 1681i(a)(1)(A). By granting summary judgment to Experian, the district court held that the company complied with its reinvestigation obligations. Here again, the district court erred."* Dennis v. BEH-1, LLC, 520 F.3d 1066, 1069-70 (9th Cir. 2008)(Docket No: No. 04-56230)( Decided March 27, 2008).

### E. The Statutory Defect of Reporting a Nonexistent Entity

Defendants' core reporting mechanism violates the foundational tenets of federal law by reporting an account originated by an entity that does not legally exist. A mere physical building or address is not a legal entity capable of being a creditor. A creditor must be a legally recognized person or entity.

- 1 U.S.C. § 1 explicitly states: **"the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."**
- 15 U.S.C. § 1681a(b) explicitly states: **"The term 'person' means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity."**

Because the reported entity does not legally exist, it falls entirely outside the statutory definitions of a "person" or "entity" capable of functioning as a creditor. Consequently, reporting an alleged debt assigned to a nonexistent entity represents a catastrophic factual and legal inaccuracy under 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i.

### V. REBUTTING DEFENDANTS' SUBSTANTIVE MSJ ARGUMENTS

### A. The "Legal Issue" Fallacy

In their Joint Motion, Defendants straw man and attempt to characterize Plaintiff's dispute as a mere "legal issue" regarding the viability of a residential lease debt, citing cases like *Carvalho v. Equifax Info. Servs., LLC* and *Humphrey v. Trans Union LLC*. Defendants' reliance on these cases is fatally flawed. Those cases involved

- 9 -

consumers disputing complex contractual interpretations, or presenting legal defenses to factually valid debts. In stark contrast, Plaintiff's dispute is based on a ***factual impossibility***: the legal nonexistence of the corporate entity reported as the creditor. The factual nonexistence of an entity is a fundamental factual inaccuracy that CRAs are statutorily obligated to correct, not a contractual interpretation.

**B. The Identity Theft Strawman**

Defendants' MSJ repeatedly attempts to fault Plaintiff for failing to submit a police report or identity theft documentation to support his dispute. This is a deliberate mischaracterization of Plaintiff's claims. Plaintiff is not claiming that a thief stole something; Plaintiff is establishing that the company itself is a phantom entity. A police report cannot investigate a nonexistent corporation. Defendants are utilizing an "identity theft" strawman to justify their refusal to investigate the actual, factual nonexistence of the reported creditor.

**C. The Irrelevant Vehicle Registration Distraction**

To further distract from their core FCRA violations, Defendants attempt to introduce a purported vehicle registration from an entirely unrelated Ninth Circuit matter. Plaintiff will not engage with this irrelevant, out-of-context fishing expedition. The burden is not on Plaintiff to untangle Defendant's post hoc hearsay.

The sole relevant inquiry before this Court is Defendants' reporting of a legally nonexistent entity, which this unrelated hearsay does not cure.

**D. Actual Damages, Medical Evidence, and the Pre-Litigation Catalyst**

Defendants falsely argue that Plaintiff's claims for damages fail for a lack of medical records. This is completely defeated by the evidentiary record. The cataclysmic denial of federal university aid occurred on **December 5, 2025**. After weeks of attempting to resolve this massive inaccuracy administratively, this devastating federal aid denial became the final catalyst setting off a snowball effect of continuous

- 10 -

PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

financial and personal damages, which forced Plaintiff into litigation as defendants refused to cease the harm they were causing.

These damages were subsequently exacerbated by Defendants' ongoing, bad-faith litigation tactics. Plaintiff required and secured formal medical evaluations, diagnoses of psychosocial stress, the initiation of medication on May 22, 2026, and therapeutic sessions beginning May 13, 2026. The Federal Rules of Civil Procedure do not proscribe when a victim can seek treatment for escalating injuries caused by a defendant's ongoing bad-faith reporting. **(See Exhibit 7 MD Psychosocial Diagnosis) (Exhibit 8: University Federal Aid Denial Letter)**

**E. Rebutting the "No Inquiries" Defense and Manipulated Statute of Limitations**

Defendants falsely argue that between October 2025 and December 2025, there were "no hard inquiries" on Equifax and Experian, implying no reports were disseminated to third parties, thereby attempting to defeat a § 1681e(b) claim. This argument fails on multiple fronts. First, under Ninth Circuit law, a consumer establishes a violation of § 1681e(b) based on the ***preparation*** of an inaccurate report within the CRA's internal file system. The Ninth Circuit strictly holds: *"In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information."* *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). Defendants themselves admit the tradeline was updated and active during those months, meaning they actively prepared an inaccurate report.

Second, actual hard inquiries ***did*** occur after the lawsuit was filed, resulting in concrete credit denials that compounded the cataclysmic university denial. To escape this ongoing liability, Defendants have engaged in a bad-faith scheme to manipulate the statute of limitations, improperly arguing backward from a fixed point. Equifax explicitly admits to this manipulation in its interrogatory responses, declaring under

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT**

oath: *"Equifax will consider the relevant time period to be December 9, 2023 through December 9, 2025..."*

The Ninth Circuit forbids this manipulation. 15 U.S.C. § 1681p strictly mandates the statute runs ***forward*** from the date of occurrence or discovery. As the Ninth Circuit established: *"Section 1681p(1) of the FCRA, a deceptively simple provision, sets the statute of limitations at "2 years after the date of discovery [or constructive discovery] by the plaintiff of the violation that is the basis for such liability." Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1109 (9th Cir. 2012). Furthermore, federal courts uniformly hold that *"[E]ach transmission of the same credit report is a separate and distinct tort to which a separate statute of limitations applies." Acton v. Bank One Corp.*, 293 F. Supp. 2d 1092, 1098 (D. Ariz. 2003). Therefore, any subsequent actual inquiries and credit denials resulting from the ongoing inaccurate reporting (including those occurring ***after*** the lawsuit was filed) constitute distinct harms highly relevant to demonstrate ongoing actual damages. (**See Exhibit 9 Post-Filing Inquiry Logs and credit denials**)

**F. The True § 1681b Violation (Impermissible Purpose & Spoliation)** The actual 15 U.S.C. § 1681b violation occurred on or around **August 12, 2024**, when Defendants allowed their business partner, the collection company, to access Plaintiff's credit file. The Ninth Circuit explicitly commands: *"The FCRA limits the purposes for which consumer credit reports may be used... A CRA may furnish a credit report only to a person the CRA 'has reason to believe... intends to use the information in connection with a credit transaction... initiated by the consumer.'" Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010). Defendants' own documented inquiry logs irrefutably prove that while other businesses provided actual permissible purpose codes, this collection company listed *no permissible purpose whatsoever*. (**See Exhibit 10: Inquiry Log Showing August 12, 2024 Entry**)

- 12 -

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT**

Furthermore, Defendants successfully and intentionally utilized proprietary control to scrub the August 12, 2024, inquiry from Plaintiff's file to hide this § 1681b violation. However, one Defendant inadvertently failed to delete the inquiry prior to production. This systemic spoliation and subsequent slip-up constitutes undeniable evidence of bad faith.

**G. Rebutting the "Safeco" Willfulness Defense**

Defendants rely on *Safeco Ins. Co. of Am. v. Burr* to argue their actions were "objectively reasonable" and thus not a willful violation of the FCRA. Under *Safeco*, willfulness includes "reckless disregard" of statutory duties. It is the absolute antithesis of "objectively reasonable" for a CRA to repeatedly verify a debt originating from a legally nonexistent entity. Furthermore, actively utilizing proprietary systems to scrub inquiry logs to cover up an impermissible § 1681b access constitutes deliberate, knowing, and willful evasion of the statute.

**H. The Availability of Declaratory and Injunctive Relief**

Defendants incorrectly claim that declaratory and injunctive relief is completely unavailable to private litigants under the FCRA. First, Plaintiff's claims are also grounded in the California Consumer Credit Reporting Agencies Act (CCRAA). California Civil Code § 1785.31(b) strictly provides for injunctive relief. Second, declaratory relief is separately governed by the federal Declaratory Judgment Act (28 U.S.C. § 2201), which empowers the Court to declare the rights and legal relations of the parties in any case of actual controversy.

**I. Rebutting Procedural Grievances and Extreme Bad-Faith Gamesmanship**

Defendants attempt to prejudice the Court by complaining that Plaintiff failed to participate in a "joint" briefing. Defendants intentionally subverted the joint briefing process. They completely withheld their 900+ pages of supporting exhibits and declarations, ***never*** serving them on Plaintiff prior to filing. They expected Plaintiff to blindly draft an opposition to arguments and evidence he was entirely barred from

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT**

reviewing until Defendants officially filed them on the public docket. Plaintiff was forced to file a separate motion to avoid this extreme, orchestrated prejudice and ambush.

## VI. EXPOSING THE "SINGLE ENTITY" SHAM VIA LATE-PRODUCED INTERROGATORIES

### A. The Strategic Withholding of Discovery

Defendants intentionally delayed serving their sworn interrogatory responses until May 14, 2026, after the May 13 close of discovery and after their self-imposed deadline for the "joint" summary judgment brief. Transunion explicitly admits to calculating this timeline, stating under oath that because the interrogatories were served on April 14, the response was conveniently due "after the close of discovery". This was a calculated tactic designed to prevent Plaintiff from utilizing these devastating admissions in the summary judgment briefing while preserving Defendants' right to the "last word." Because Plaintiff rightfully opted for separate briefing, these late-produced responses are now squarely before the Court, and they completely dismantle Defendants' Joint Motion. **(See Exhibit 11 emails) (See Exhibit 12: Sworn Interrogatory Responses)**

### B. The Sworn Refusal to Link the Entities

Throughout their MSJ, Defendants base their entire defense on the unsworn assertion that the reported entity ("City View CA") and the substituted, mid-litigation entity ("City View Apartments") are the exact same legal entity. However, when forced under oath to state the facts linking these two entities:

- **Experian** completely surrendered its defense, swearing: *"Experian does not take a position as to whether 'City View CA' and 'City View Apartments' are the 'same legal entity' because the furnisher of the collection tradeline is IQ Data".*

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT**

- **Equifax** refused to answer, objecting that explaining the legal link between the entities "calls for a legal conclusion" and formally admitting it "has not searched for information responsive to this Interrogatory".
- **Transunion** similarly refused to answer, objecting that explaining the link "expressly seeks a legal analysis" and is "protected by the attorney-client privilege".

**C. Hiding Behind "Work Product" to Conceal the Creditor Swap**

In Interrogatory No. 19, Plaintiff asked Experian to explain the factual basis for directing a third-party subpoena to "City View Apartments" when the reported tradeline they verified administratively was for "City View CA". Experian stunningly refused to answer, claiming that explaining this discrepancy would reveal "attorney work-product privilege". This is a massive vulnerability. Experian is implicitly admitting that connecting the reported entity to the subpoenaed entity is a lawyer-created litigation strategy, not a pre-existing factual reality.

**D. Experian's Blanket Confession to the "Parrot Defense"**

Across almost every single interrogatory, Experian used the exact same boilerplate excuse: *"Experian states that it cannot respond to this interrogatory as phrased because the tradeline subject to Plaintiff's disputes was a tradeline furnished by IQ Data"*. A CRA cannot legally delegate its § 1681i reinvestigation duty entirely to the furnisher. This is a sworn confession that Experian conducted zero independent investigation and is entirely reliant on the debt collector's automated ping.

**E. The Sworn Corporate Internal Conflict Uncovered**

The internal record contains an explicit contradiction regarding the reported data. Equifax's corporate analyst swears under penalty of perjury that the original creditor for the account is "City View Apartments". Concurrently, Experian's corporate analyst explicitly swears under penalty of perjury that the original creditor listed on the exact same ACDV data transmission sheet is "City View CA". Meanwhile,

- 15 -

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT**

Equifax's defense counsel outlines collection letters declaring the debt is owed to a third variation, "City View (CA)". Defendants cannot invoke a defense of accuracy under 15 U.S.C. § 1681e(b) when their own internal records and analyst declarations flatly contradict one another under oath regarding who the creditor actually is.

**F. Trans Union's Fatal Evasion on the Identity of the Furnisher**

In response to Interrogatory No. 17, Transunion objects that Plaintiff's question incorrectly *"implies that Trans Union reported information furnished by an entity named 'City View CA,' which Plaintiff asserts does not exist and did not, in fact, furnish information to Trans Union, when in actuality a different furnisher of credit information provided information to Trans Union"*. This is a written confession that the entity they reported on Plaintiff's file never communicated with them, validating Plaintiff's claim that the reported data is structurally impossible and completely manufactured.

**G. The Circular Chain of Unauthenticated Reliance**

Further demonstrating that their evidentiary foundation is a sham, Defendants' interrogatory responses reveal they have no independent ability to authenticate the documents they rely upon in their MSJ. Instead of authenticating their own evidence under oath, they point to each other:

- **Equifax** formally relies on the defective Certificate of Authenticity produced by *Experian*.
- **Transunion** formally relies on the unauthenticated Subpoena documents produced by *Equifax*.
- **Experian** admits that the documents are third-party records "not in Experian's custody, possession, or control," directing Plaintiff back to the original defective production.

- 16 -

PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

This circular reliance proves that no Defendant actually possesses the foundational knowledge required by FRE 803(6) or FRE 902(11) to admit the evidence underlying their Joint MSJ.

**H. Experian's Startling Admission on Phantom Entities**

In response to Interrogatory No. 25, Experian explicitly argues that the FCRA "does not require furnishers to be registered with the California secretary of state in order to furnish information". This is a written, sworn admission that Experian's internal policies allow it to report tradelines from phantom, unregistered, and legally nonexistent entities in direct violation of the FCRA's "maximum possible accuracy" mandate.

**I. Equifax's "Business License" Contradiction**

Equifax claims in Interrogatory No. 21 that its vetting procedures require a "valid business license" and an "investigation of the company, which may include an onsite visit". If Equifax strictly required a business license and performed onsite visits, it is factually impossible for them to have legitimately vetted the reported creditor, which has no legal existence or registration. This glaring contradiction further exposes the catastrophic failure of their "reasonable procedures."

**VII. CONCLUSION: THE FRAUD UPON THE COURT**

Defendants have presented this Court with a Joint Motion for Summary Judgment built entirely on a foundation of sand. In a desperate attempt to shield their willful violations of the Fair Credit Reporting Act, Defendants have resorted to extreme, bad-faith gamesmanship.

The record irrefutably demonstrates that Defendants published and repeatedly verified a derogatory collection tradeline originated by a legally nonexistent phantom entity. To cover up this fundamental failure of "maximum possible accuracy" under 15 U.S.C. § 1681e(b) and "reasonable reinvestigation" under 15 U.S.C. § 1681i, Defendants engaged in a mid-litigation substitution of the creditor, backdated

- 17 -

subpoena documents, and submitted mutually contradictory attorney declarations and defective hearsay certificates. Furthermore, Defendants willfully engaged in the spoliation of evidence by scrubbing their inquiry logs to conceal an impermissible access of Plaintiff's credit file by their collection company business partner, a direct violation of 15 U.S.C. § 1681b.

When finally forced to answer under oath in late-produced interrogatories, Defendants formally refused to establish any legal link between the phantom entity they reported and the substitute entity they subpoenaed, effectively severing their own chain of custody and confirming the structural impossibility of their data. Because Defendants' entire defense relies on inadmissible hearsay, systemic spoliation of calls and other evidence, and sworn contradictions that constitute a fraud upon the Court, and where they presented claims regarding their prior filings that they knew were dishonest and fabricated, their Joint Motion for Summary Judgment fails as a matter of law.

**WHEREFORE**, Plaintiff respectfully requests that the Court strike Defendants' inadmissible exhibits, DENY Defendants' Joint Motion for Summary Judgment in its entirety, and GRANT Plaintiff's Cross-Motion for Summary Judgment.

Dated: May 27, 2026

By:/s/ Chiddy Golden

_____

Chiddy Golden
Pro Se Plaintiff

PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT